**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
HAND PICKED SELECTIONS, INC.,

                      Plaintiff,

       - against -

HANDPICKED WINES
INTERNATIONAL PTY LTD., et al.,

                     Defendants.
-----------------------------------------------------------X

**ORDER**

CV 06-0356 (FB) (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

Plaintiff Hand Picked Selections, Inc. ("Selections") seeks sanctions against defaulting defendant AM Advertising Design Pty Ltd ("AM") pursuant to Fed. R. Civ. P. 37(d). In particular, Selections asks that I deem certain facts admitted based on AM's failure to produce discovery. For the reasons set forth below, I deny Selections' motion in its entirety.

I. <u>Background</u>

Selections is a Virginia-based independent wine merchant that sells and distributes wine products throughout the United States. Docket Entry ("DE") 1 ("Complaint") ¶¶ 1,6. Defendants Handpicked Wines International Pty Ltd ("Wines") and AM are Australian companies that co-own United States Trademark Registration No. 2,694,440 (the "440 Registration"). Selections accuses the defendants of trademark infringement, unfair competition, and misappropriation with respect to their application for and use of the 440 Registration and seeks damages and equitable relief including cancellation of the 440 Registration. *See* Complaint.

Prior to bringing the instant suit, Selections commenced an administrative proceeding in the United States Patent and Trademark Office ("PTO") seeking to cancel the 440 Registration.

Selections cited its own prior use of the registered mark and the likelihood of confusion that would result from the defendants' use of it. *See* DE 14 (Memorandum in Support of Plaintiff's Motion) ("Memo.") at 8. Wines and AM, represented by the same attorney, each served an answer to Selections' administrative petition. *Id.* at 9.

Thereafter, Selections learned that the defendants had made actual use of the challenged mark. On that basis, Selections filed suit in this court seeking damages. Although both defendants had answered the administrative petition, they did not both act similarly in this court. Instead, Wines served an answer to Selections' complaint and moved to stay the administrative proceedings in the PTO, *see id.* at 10; DE 4, but AM simply ignored the new action. As a result, on March 20, 2006, the Clerk of this court, acting at the request of Selections, noted AM's default on the record. *See* DE 5; DE 6. Two days later, the PTO stayed the administrative proceeding pending the outcome of this case. Memo. at 10.

AM's default did not deter Selections from seeking discovery from it. To the contrary, Selections sought to employ discovery procedures quickly and, as discussed below, prematurely. On March 30, 2006, I issued an order requiring the parties to appear for an initial conference to discuss discovery on May 9, 2006. DE 7. Not content to wait for that conference to address the orderly conduct of discovery, on April 6, 2006, Selections served AM's statutory agent with a subpoena that commanded AM to produce a witness with knowledge of certain matters to appear for a deposition and to produce documents responsive to some 23 separate requests. Selections purported to require AM to produce documents on April 21, 2006, and to produce its witness on April 27, 2006 – all before the date of the discovery planning conference that I had already scheduled. *See* DE 13, Ex. 9 (subpoena dated April 6, 2006). After AM failed to comply with

the subpoena, Selections submitted a letter requesting a pre-motion conference in anticipation of the instant motion for sanctions. DE 8. I addressed the matter at the conference on May 9, 2006 (which Wines attended through counsel but AM did not), and granted Selections permission to file the motion now before me. DE 10.

Selections claims that AM's failure to respond to the subpoena constitutes sufficiently willful and absolute noncompliance with discovery to warrant a rather extreme form of sanctions pursuant to Rule 37. In particular, it asks that I deem the following three facts admitted for purposes of this action:

(1) On January 4, 2001, AM did not succeed to any existing and ongoing business of Mills;

(2) On January 4, 2001, AM did not have the "bona fide intention to use the mark in commerce" that was then claimed in the '313 Application; and

(3) At no time prior to March 11, 2003, did AM ever file or support the '313 Application with any sworn declaration of "bona fide intention to use the mark in commerce" as was claimed in the '313 Application.

Memo. 15-16. Selections claims that such relief is necessary since the actions of both defendants have contributed to its inability to obtain the information it needs to challenge the 440 Registration. In brief, Selections notes that AM's co-defendant Wines has claimed that it does not have any documents concerning these facts despite the two entities' close relationship and intimates that the defendants have engaged in a concerted effort to withhold information and documents to obstruct Selections' ability to challenge the 440 Registration. Memo. at 16-20.[1]

---

[1] Selections also requested oral argument on its motion. *See* DE 24 at 2. In light of the analysis below, I can decide the motion without argument. The application for oral argument is therefore denied.

Consistent with its previous lack of participation in this case, AM did not respond to Selections' motion. Wines, however, did: it submitted a spirited opposition strenuously opposing the requested relief. *See* DE 20 (Memorandum in Opposition to Plaintiff's Motion) ("Opp."). Wines first argues that Rule 37 is not applicable with respect to AM because AM ceased to be a "party" to this action once the clerk noted its default. *Id.* at 4-6. Wines avers that Selections' remedy for AM's purported noncompliance is to attempt to secure the information and documents it seeks from AM through non-party discovery. *Id.* at 6. Wines further counsels that even if sanctions are warranted, the specific relief Selections seeks would unjustly prejudice Wines' ability to defend the case against it since doing so would be the functional equivalent of declaring the 440 Registration invalid. *Id.* at 6-10.

II.     Discussion

While the parties have devoted considerable attention to a number of legal issues, I conclude that resolving the instant motion does not require me to reach all of them. In particular, Selections and Wines disagree as to whether or not AM should be considered a party for purposes of the request for sanctions under Rule 37. I need not resolve that dispute because Rule 37 is inapposite no matter what label I use to describe AM.

If AM is properly considered a non-party, as Wines contends it should, then Rule 37 is simply inapposite. That rule authorizes me to sanction a "party" for its failure to obey various types of discovery orders, attend a properly noticed deposition, or respond to a properly served discovery request, Fed. R. Civ. P. 37(b), (d), but it confers no such authority with respect to a non-party. To be sure, the preceding does not mean that AM, by defaulting, can ignore a court order with impunity; I merely note that Rule 37 does not provide the relevant sanctioning

authority. Instead, if AM is a non-party, the court may hold it in contempt for its "[f]ailure ... without adequate excuse to obey a subpoena served upon [it]." Fed. R. Civ. P. 45(e).[2] Indeed, such a finding of contempt is the *only* authorized sanction under Rule 45, as opposed to the more varied palette of Rule 37.

On the other hand, if AM is a "party," the haste with which Selections pursued its quest for information now precludes it from securing the relief it seeks. As Selections' counsel had occasion to point out to me at the initial conference, the relevant rule provides that a party may issue discovery requests once it has met and conferred about discovery with its opponents. *See* Fed. R. Civ. P. 26(d) ("a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)"). If AM is eligible for sanctions under Rule 37 because it is a "party," then it is also entitled to the benefit of the orderly discovery process that Rule 26 mandates. And although Selections may have conferred with Wines as required by Rule 26(f), it is apparent from the record that no attorney has represented AM or appeared on its behalf with respect to this action – from which I infer that Selections did not have an opportunity to confer with AM before serving its subpoena. Accordingly, any attempt to serve a request for party discovery on AM was premature,[3] and cannot serve as the predicate for sanctions under Rule 37.

---

[2] I refer to "the court" rather than to myself advisedly: while Rule 37 and 28 U.S.C. § 636(b) combine to authorize me to impose sanctions under Rule 37, I may do no more than certify to a district judge that an act constitutes a civil contempt, and thereupon must leave it to the court to punish the contemnor. *See* 28 U.S.C. § 636(e)(6).

[3] There are exceptions to the general timing restriction in Rule 26(d), but none is apposite here. This case does not fall within one of the exempted categories of proceedings listed in Rule 26(a)(1)(E), there is nothing in the record to suggest that AM ever agreed to waive the timing rule, and I did not order discovery to commence before the initial conference on May 9, 2006.

To the extent this result may seem anomalous at first blush, it is only because Selections is seeking to turn the authority to impose discovery-related sanctions to its tactical advantage in a way that is entirely unrelated to the interest that such authority serves. Discovery is a process that allows opposing parties to prepare for trial on the merits in an orderly fashion. When one party to a dispute impedes that process, Rule 37 first provides authority to compel discovery that a party properly seeks. *See* Fed. R. Civ. P. 37(a). If a party is harmed by having to seek the court's assistance in compelling discovery, Rule 37 provides a proportionate remedy by permitting a court to require the delinquent party to pay the movant's costs (and likewise protects a litigant against an improvident motion to compel). Fed. R. Civ. P. 37(a)(4).

On the other hand, if the harm arising from a delinquent party's failure to provide discovery is not a matter of costs, but is instead a harm to the movant's ability to obtain a fair hearing of the underlying dispute on the merits, then Rule 37 authorizes a variety of just sanctions that protect the movant from such prejudice. *See* Fed. R. Civ. P. 37(b)(2), (d). Such sanctions affect the merits of the litigation by placing the risk of a verdict uninformed by important facts on the party that made evidence of those facts unavailable in the discovery process. Thus, a court can punish a discovery violation by deeming certain facts admitted or by preventing a party from advancing or opposing certain defenses. *Id.* Where a party's discovery violation is so extreme that its adversary cannot in any meaningful sense advocate its position, Rule 37 permits the most extreme sanctions: dismissal of a complaint or the entry of a default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2); *Cine Forty-Second Street Theatre Corp., v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979). Such a

sanction has the effect of treating a party's willful noncompliance as the equivalent of having failed to participate at all in the lawsuit.

One way to view the scheme of sanctions under Rule 37 is that it shifts the litigation risk, to a greater or lesser degree, between the recalcitrant party and the party seeking discovery. All of the sanctions make it more likely that at the end of the case, the judgment will be against the recalcitrant party and in favor of the party whose discovery rights were frustrated. Viewed in that light, the instant motion is, in a sense, moot. The Clerk has already noted that Wines is in default. Instead of proceeding in half-steps by obtaining a Rule 37 sanction that will make it *easier* for Selections to obtain a judgment against AM, Selections could right now simply ask for judgment against AM on the basis of its default. *See* Fed. R. Civ. P. 55(b). There is no question that Selections is in a position to seek such relief, nor is there any question that a default judgment would provide Selections all of the relief *against AM* that the most severe sanction under Rule 37 would afford, and considerably more relief than Selections has actually requested. Selections took the first step toward obtaining such relief over three months ago by successfully moving for an entry of default against AM pursuant to Rule 55(a). DE 5. If Selections were simply interested in vindicating its rights against AM, I assume it would long ago have taken the next step by filing a motion under Rule 55(b).

But of course, this entire exercise has little to do with securing relief against AM. Selections has not offered an explanation as to why it has not moved for a default judgment, but I can infer from its submissions that it has chosen to pursue the lesser remedy of Rule 37 sanctions as a quick and easy way to secure relief against Wines – a party that has not defaulted and appears, at least on this record, to be willing to participate in discovery and the litigation process

– by using AM's default as a means to resolve the issue of the validity of the 440 Registration in its favor. *See* Memo. at 16-20; DE 23 (Reply Memorandum in Support of Plaintiff's Motion) at 9-10. I cannot fault Selections for its creativity in seeking tactical advantage against an opponent, but I also cannot endorse its attempt to misuse an authority to sanction that is geared to advancing the process of adversarial litigation rather than circumventing it.

A party cannot use a default judgment issued against one adversary collaterally against another. *See The Mary,* 13 U.S. 126, 143 (1815); *Marfia v. T.C. Ziraat Banski,* 100 F.3d 243, 251-253 (2d Cir. 1996). It would therefore be improper to allow Selections to accomplish indirectly via Rule 37 sanctions what the law forbids it to accomplish directly. Instead, Selections should seek a default and a decree *pro confesso* against AM while proceeding with the action on the merits against Wines. To the extent that procedure creates a risk of inconsistent results, that risk can be obviated by withholding judgment against AM until the action is resolved with respect to Wines. *See Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*, 2002 WL 31545845, *3 (S.D.N.Y. 2002) (citing *Frow v. De La Vega*, 82 U.S. 552, 553 (1872)).

Selections has indicated that there may be good reason in this case to follow a different course. It suggests that the defendants have conspired to withhold information and alleges that both defendants' actions have restricted its ability to obtain discovery necessary to prosecute its claim. *See* Reply at 7-8. It notes that the two defendants co-own the mark at issue, have the same trademark counsel, and were until recently co-venturers. *Id.* at 1-3. It is undoubtedly correct that there are at least some facts that appear to be consistent with the proposition that Wines and AM are colluding to frustrate Selections' rights by having one appear in this court and claim not to have discoverable information while the other defaults to the advantage of both. *See*

8

Terry Cert.; DE 22 (certification of Michael O'Brien, Wines' Sales and Marketing Manager). If that is the case, Selections may well have remedies available to it against Wines, including, on the basis of a sufficient record, a severe sanction against Wines for frustrating Selections' legitimate right to discovery.

Thus, the outcome of the instant motion should not be misconstrued as carte blanche for any party to frustrate the process of orderly discovery. I will no more be willing to permit one party before me to participate in a scheme to keep its opponent from obtaining discoverable information (if such misconduct is ultimately demonstrated through adversarial testing), than I am now willing to let its adversary bypass the applicable procedural rules to achieve a tactical advantage.

III. Conclusion

For the reasons set forth above, I deny Selections' motion in its entirety.

**SO ORDERED.**

Dated: Brooklyn, New York
June 22, 2006

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge